IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-00124-RBJ

BERNARD E. HALLMON, an individual,

     Plaintiff,

v.

ADVANCE AUTO PARTS, INC. d/b/a Advance Stores Company, Inc.,
a Delaware corporation,

     Defendant.

_____

ORDER

_____

This matter is before the Court on Defendant's Motion for Summary Judgment [docket #26].

**Facts**

The plaintiff, Bernard Hallmon, is an African-American man who was employed as a general store manager by Advance Auto Parts, Inc. ("Advance"). Mr. Hallmon was initially hired in April 2004 by Advance for a store located in Georgia. In April 2006, Mr. Hallmon resigned his position but applied for it again in the same year. Mr. Hallmon was rehired by Advance in November 2006. Mr. Hallmon began working for Store 5031 in Denver, Colorado in April 2009.

After a district realignment of Advance stores in June 2009, Kevin Fucile became the district manager for Store 5031 and Mr. Hallmon's immediate supervisor. Mr. Hallmon was the only African-American store manager in Mr. Fucile's district.

Advance alleges that in a meeting in February 2010 Mr. Fucile met with Jeff Ellis, a human resources manager, and Markus Hockenson, the regional vice president, and discussed relocating Mr. Hallmon to a smaller store because of his poor performance within Mr. Fucile's district. [Ellis Dec. ¶¶ 12–14.]  If Mr. Hallmon did not transfer stores, Advance alleges that it then would be policy to place him on a "performance improvement plan" or "PIP."  [*Id.* ¶ 14.].  Sometime in March or April 2010, Mr. Fucile approached Mr. Hallmon to discuss a potential relocation to a smaller store, which Mr. Hallmon turned down.

On April 25, 2010, in responding to an Advance employee survey, Mr. Hallmon expressed concerns over, inter alia, the lack of racial equality in the workplace, particular with respect to Mr. Fucile.[1]  [Team Calibration Report, p. 4.]  Subsequently, Mr. Hallmon alleges that Mr. Fucile, deducing that the response was submitted by Mr. Hallmon, proceeded to mock him and his complaint publicly with other store managers.  [Hallmon Aff. ¶¶ 11–12.]

On May 1, 2010, Mr. Hallmon met with Mr. Ellis to discuss his concerns about Mr. Fucile.  The parties dispute whether Mr. Hallmon complained then of racial discrimination.  On May 3, 2010, Mr. Hallmon alleges that Mr. Fucile cornered him in the store and screamed at him about various store procedures and strategies, while clenching a fist and then making a motion as if about to punch Mr. Hallmon in the face.  [Hallmon Aff. ¶ 14.]  Later on the same day, Mr. Fucile delivered a PIP during a meeting with Mr. Hallmon and Mr. Ellis, which Advance alleges was part of the February plan of action.  At this meeting, Mr. Hallmon stated again that he believed he was being treated differently by Mr. Fucile due to his race.  At some point in the

---

[1] Specifically, Mr. Hallmon wrote:
> My [district manager] should inspire and thank all [general managers] for their dedication and hard work, not just a hand picked Few, who think and look like him we are all in this district as one regardless of age, gender, or race theirfore [sic] being treated as equals will bring a higher moral [sic] and help us Achieve are [sic] most important goals.

week or two following, the PIP was reintroduced to Mr. Hallmon but put "on hold" by Mr. Ellis, who instructed Mr. Fucile and Mr. Hallmon to communicate better.

On July 26, 2010, Mr. Fucile circulated an email to Advance store managers congratulating Mr. Hallmon for an award.   The email began with "Winner Winner Chicken Dinner!!"  [#26-14, p. 1.]  Mr. Hallmon believes that the allusion to a "chicken dinner" was a derogatory reference to his race.

On August 18, 2010 Debra Gomez, a part-time Advance employee, complained to Mr. Fucile about Mr. Hallmon's management skills, which she previously had addressed to Mr. Hallmon himself.  On August 19, Mr. Fucile told Mr. Hallmon about the complaint but did not identify the complainant.  The parties dispute whether Hallmon, who deduced the identity of the complainant, then reduced Ms. Gomez's hours at Advance for the following weeks, and whether any reduction in her hours was in retaliation against Ms. Gomez for her complaint.  On the same day Mr. Fucile issued a written reprimand for Mr. Hallmon's tardiness at managers' meetings on June 24 and August 10, 2010.  The parties dispute whether Mr. Hallmon's tardiness was due to Mr. Fucile's intentional exclusion of Mr. Hallmon from the meetings.

On August 20, Mr. Hallmon filed an Ethics Point Complaint with Advance about Mr. Fucile's alleged racial discrimination against him.  Advance's Human Resources Director Chris Popek investigated the complaint.  Mr. Popek recorded on the Ethics Point Complaint that he was not able to "find any direct or indirect evidence of harassment, unequal treatment, or racism on the part of Kevin Fucile" and closed the complaint on September 10.

On September 13, Mr. Fucile issued Mr. Hallmon a written reprimand for violating the company's "Open Door Policy" by reducing Ms. Gomez's hours.  This Open Door Policy allows Advance employees to contact their supervisors about any concerns or suggestions and assures

that the "communications will be treated in a professional and confidential manner." [Team Member Handbook, p. 3.]  Mr. Hallmon was placed on suspension pending an investigation into the incident.

On September 16, Mr. Hallmon, upon seeing the status of his Ethics Point Complaint and the resolution input by Mr. Popek, commented again on the online system that nothing has been resolved in his discrimination claim against Mr. Fucile.  Later on the same day, Mr. Hallmon was terminated from Advance.   The parties dispute over who the ultimate decision maker was for the termination.  The written termination notice states as reason for termination that Mr. Hallmon violated Advance's Open Door Policy.

After exhausting his remedies with the Equal Employment Opportunity Commission, Mr. Hallmon filed this lawsuit, asserting violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.  Mr. Hallmon also asserts a state law claim under the Colorado Wage Claim Act, C.R.S. § 8-4-1 *et seq.*, over which this Court has supplemental jurisdiction. Advance now seeks summary on all of Mr. Hallmon's claims and on Advance's affirmative defense of after-acquired evidence.

**Standard of Review**

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.*  When the movant does not have the ultimate burden at trial, it

4

may succeed on a motion for summary judgment when it has shown the court that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Conclusions**

Race Discrimination under Title VII and § 1981

Mr. Hallmon's first and fourth claims are for race discrimination under Title VII and § 1981. A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through direct or indirect evidence of discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). Because Mr. Hallmon has offered no direct evidence of discrimination, this Court analyzes the sufficiency of circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This analytical framework is the same under Title VII as under § 1981. *Kendrick*, 220 F.3d at 1225, n. 4; *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir.), *cert. denied*, 513 U.S. 819 (1994).

Under the *McDonnell Douglas* analysis, the plaintiff must first prove a prima facie case of discrimination. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). If he does so, the employer must "produce a legitimate, non-discriminatory reason for the adverse employment action." *Id*. If the employer does so, the burden at the summary judgment stage shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether

the employer's proffered reason for the challenged action is pretextual.  *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004).

Advance does not dispute, for the purpose of the summary judgment motion, that Mr. Hallmon can establish a prima facie case of racial discrimination.  Advance argues -- and Mr. Hallmon does not dispute -- that Mr. Hallmon's violation of the Open Door Policy suffices as a facially non-discriminatory justification for discharging Mr. Hallmon.  Accordingly, Advance argues that summary judgment is appropriate because there is no genuine dispute of material fact as to whether that proffered justification is pretextual.

Plaintiffs can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951–52 (3rd Cir. 1996)).  Although there is no strict form that plaintiffs must follow, pretext is typically shown with one of three types of evidence: (1) evidence that the stated reason for the adverse action was false; (2) evidence that the employer acted contrary to a written policy; or (3) evidence that the employer acted contrary to an unwritten policy or the company practice.  *Kendrick*, 220 F.3d at 1230.

Mr. Hallmon makes several arguments as to why Advance's reason for discharge was pretextual.  First, Mr. Hallmon argues that the stated reason was false -- that Mr. Hallmon did not, in fact, retaliate against Ms. Gomez in violation of the Open Door Policy.  Mr. Hallmon also argues that he and other African-American Advance employees have been disparately treated on the basis of their race.  Finally, Mr. Hallmon submits evidence that his termination is inconsistent with the progressive discipline policy at Advance [*see* Advance Human Resource Personnel

Information, at 13], and that no other employees have been terminated for violating the Open Door Policy.

Because genuine disputes exist over these material issues and a reasonable jury could conclude Advance's proffered reason for termination was pretextual, I find that summary judgment on Mr. Hallmon's discrimination claims is not appropriate. Accordingly, the Court denies the defendant's motion for summary judgment on the plaintiff's first and fourth claims for relief.

Retaliation under Title VII and § 1981

Mr. Hallmon also asserts claims for retaliation under Title VII and § 1981 in his third and sixth claims. Because Mr. Hallmon has not presented direct evidence of retaliation, this Court will also analyze his retaliation claims under the *McDonnell Douglas* burden-shifting framework. *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

Mr. Hallmon must first demonstrate a prima facie case of retaliation by establishing that: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). "The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981." *Id.* at 1211. If Mr. Hallmon can show a prima facie case, the burden shifts to Advance to provide a legitimate, non-discriminatory reason for its employment action. *Id.* Finally, if Advance can satisfy its burden, Mr. Hallmon then bears the burden to show that proffered reason was pretextual. *Id.*

Mr. Hallmon alleges several instances of retaliation by Advance that he claims amounts to a pattern of retaliatory conduct: (1) "worsening behavior" by Mr. Fucile after each of Mr. Hallmon's complaints, which began on April 25, 2010; (2) the issuance of the PIP in May 2010; (3) written reprimand for tardiness by Mr. Fucile on August 19, 2010; (4) suspension resulting in termination in September 2010.

As far as the court can discern from the briefing, Advance makes the following arguments in its motion:  Advance maintains that the issuance of the PIP could not have been retaliatory because (1) the PIP was never issued and therefore was not a materially adverse employment action, and (2) Advance had decided to place Mr. Hallmon on the PIP before he engaged in any protected activity.  Advance also argues that summary judgment is appropriate because the temporal proximity between Mr. Hallmon's protected activity and his discharge is insufficient to show pretext without further evidence of retaliatory motive.

For a challenged action to be "materially adverse" to a reasonable employee, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citation and quotation marks omitted).  A reasonable jury could find that, given the objective and more encompassing standard set out by *Burlington Northern*, the repeated discussion of the PIP and its presentment to Mr. Hallmon—even if ultimately an empty threat—is sufficiently adverse to dissuade a reasonable employee from engaging in a charge of discrimination.

Furthermore, although Advance is correct that retaliation cannot occur until the employer knows of the protected opposition, *see Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002), the parties are in dispute over whether the PIP was ordered in February, three

months before it was actually delivered to Mr. Hallmon, as well as over whether Mr. Hallmon complained of racial discrimination two days before the PIP was initially presented to him.

Mr. Hallmon has also presented sufficient evidence to overcome summary judgment on the issue of pretext.  Granting Mr. Hallmon the benefit of every favorable inference, he has presented evidence that he was fired within a matter of hours after his last complaint of discrimination.  There are also genuine fact disputes, as discussed above, over whether Advance's proffered reason for discharge was false and over whether Advance acted contrary to its progressive discipline policy, especially where no other Advance employee has been discharged for violating the Open Door Policy.  A reasonable jury could infer retaliatory motive when considering this evidence in combination with the demonstrated temporal proximity.  *See Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995) ("Judgments about intent are best left for trial and are within the province of the jury.").

Accordingly, the Court denies the defendant's motion for summary judgment on the plaintiff's third and sixth claims for relief.

<u>Hostile Work Place under Title VII and § 1981</u>

Lastly under Title VII and § 1981, plaintiff asserts his second and fifth claims for hostile work environment based on race.  The analytical framework for a hostile work environment claim is the same under § 1981 as under Title VII.  *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1152 (10th Cir. 2008).  This Court must determine whether (1) the acts alleged by Mr. Hallmon are part of the same hostile work environment and involve racial animus; (2) the harassment was sufficiently severe to alter the terms, conditions, or privileges of his employment; and (3) Advance's response to the alleged harassment was inadequate.  *Id.*

"Facially neutral abusive conduct can support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially]-discriminatory conduct." *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir. 1999). Nonetheless, a plaintiff "cannot meet his burden by demonstrating 'a few isolated incidents of racial enmity' or 'sporadic racial slurs.' Instead, 'there must be a steady barrage of opprobrious racial comments.'" *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).

Mr. Hallmon argues that Mr. Fucile's conduct from June 2009 through his termination in September 2010 created a racially hostile work environment. Mr. Hallmon alleges that Mr. Fucile did not talk with him the same way as with other managers, did not make eye contact with Mr. Hallmon, ignored Mr. Hallmon in meetings, excluded Mr. Hallmon from company outings, and did not give Mr. Hallmon positive feedback but rather constant and unfair criticisms. Mr. Hallmon also points to the "Winner Winner Chicken Dinner!!" email, which Mr. Hallmon believes is racially motivated. Mr. Hallmon lastly cites the May 3, 2010 incident where Mr. Fucile screamed at him and was physically threatening to him.

I do not want to trivialize the hostility or difficulty that may have been faced by Mr. Hallmon. The incidents that Mr. Hallmon has described, however, even viewed in the light most favorable to Mr. Hallmon and in totality, do not rise to a hostile work environment claim under Title VII & § 1981. The "chicken dinner" email is the only racially suggestive remark that Mr. Hallmon provides. Mr. Hallmon offers no overtly racially discriminatory conduct by Mr. Fucile or other Advance employees. Although this Court may consider facially race-neutral conduct, that conduct can support a finding of racial animus only when it is viewed in context of other overt acts. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012); *O'Shea,*

185 F.3d at 1097.  Even if the "chicken dinner" email was motivated by racial animus, this comment falls short of the "steady barrage" generally required for a hostile work environment claim.  *See Chavez*, 397 F.3d at 832 (two racially offensive remarks not pervasive or severe enough to alter the terms, conditions, or privileges of plaintiff's employment).

According, the Court grants the defendant's motion for summary judgment on the plaintiff's second and fifth claims for relief.

Colorado Wage Claim Act

Mr. Hallmon asserts a seventh claim under the Colorado Wage Claim Act (CWCA) for unpaid bonuses and for wages during his period of suspension.  The CWCA requires that, when an employee has been terminated, any wage "earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately."  C.R.S. § 8-4-109(1)(a) (2012).  The statute allows employees to make a demand for payment within sixty days of termination,[2] and if the employer does not make the required payment within ten days, the employee is entitled to both the wages and a statutory penalty.  § 8-3-109(3).  Advance argues that Mr. Hallmon is not entitled to the bonuses for the last two bonus periods of his employment, because the bonuses were not earned or vested by the time that Mr. Hallmon was terminated.

The CWCA includes, as part of "wages" or "compensation" owed, any "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee."  C.R.S. § 8-4-101(8)(a)(II).  Advance cites *Barnes v. Van Schaack Mortg., a Div. of Van Schaack & Co.*, 787 P.2d 207,210 (Colo. App. 1990), for that proposition that the employment agreement, not the CWCA, determines the conditions by which an employee earns his compensation or bonuses.  To that end, Advance

---

[2] The parties do not dispute that Mr. Hallmon made a sufficient and timely demand under the CWCA.

provides a document titled "Frequently Asked Questions – 2010 Bonus Plan" that states that employees "must be an active Team Member at time of payout" to receive bonuses after termination.  Advance argues that, like the agreement in *Barnes*, this document provides "expressly and unequivocally" that Mr. Hallmon is only entitled to bonuses if he remains an employee.  Because Mr. Hallmon was terminated one day before the bonuses were paid out on September 17, Advance argues he forfeited any right to bonuses he would have otherwise received.

In *Barnes*, the employment agreement provided that the plaintiff was entitled to bonus commissions only when loan applications he generated during his employment resulted in a loan closure in the month during which he was terminated.  *Id.* at 210.  In that sense, the employment agreement effectively defined the "vesting" of his bonuses under the CWCA—*i.e.*, his bonuses vested only once the applications resulted in a loan closure before or during the month of termination.  The "Frequently Asked Questions" provided by Advance, however, does not redefine when Mr. Hallmon has earned his bonuses or when they have vested.  Rather, it provides a condition for the payment of bonuses that otherwise have already vested and are already determinable within the meaning of the CWCA.  Adopting Advance's argument would allow employers to manipulate similar contractual language to avoid paying rightful wages to employees by conveniently terminating them shortly before their payday, contravening the public policy behind the CWCA.  *See* C.R.S. § 8-4-121 (agreements waiving or modifying employee's rights in violation of the CWCA is void).

Furthermore, factual disputes exist over whether Mr. Hallmon's suspension period was paid or unpaid and over whether Advance fully paid the wages earned by Mr. Hallmon prior to suspension.  Mr. Hallmon was suspended on September 13 pending an investigation into the

incident involving Ms. Gomez. Although Advance claims it paid Mr. Hallmon through September 13, the only document that both parties provide shows that the last pay period for Mr. Hallmon ended on September 11. [#26-14, p. 8.] Mr. Hallmon also argues that he is owed wages through September 16, for three days of paid suspension. Because neither party provides evidence beyond opposing conclusory allegations as to Advance's policy regarding earning of wages during suspension, this fact dispute should also be left for the jury.

Because the Court finds there are facts in dispute over the amount of compensation owed to Mr. Hallmon under the CWCA, the Court denies the defendant's motion for summary judgment on the plaintiff's seventh claims for relief.

<u>After-acquired Evidence Defense</u>

Finally, Advance moves for summary judgment on its after-acquired evidence defense. The Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), considered the role of evidence of wrongdoing, discovered after a wrongful termination, that would have led to the discharge of the employee on lawful and legitimate grounds. This after-acquired evidence does not bar the employee from all relief but is relevant to the determination of damages. *Id.* at 362; *see also Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 554 (10th Cir. 1999).

In applying *McKennon*, this Court uses a two-step test. *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009). First, the employer must establish "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* (quoting *McKennon*, 513 U.S. at 362-63). The employer must show that (1) it was unaware of the misconduct at the time it terminated the employee, (2) the misconduct was "serious enough to

13

justify discharge," and (3) it would have actually discharged the employee had it known about the misconduct. *Ricky v. Mapco, Inc.*, 50 F.3d 874, 876 (10th Cir. 1995). "Second, and only after an employer has met this initial showing, the after-acquired evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee." *Perkins*, 557 F.3d at 1145.

Initially, I note that, contrary to Mr. Hallmon's contention, it is appropriate to consider the after-acquired evidence defense at the summary judgment stage. Federal Rule of Civil Procedure 56(a) provides that a party may move for summary judgment on any claim or defense or part of a claim or defense. This Court may also "enter an order stating any material fact -- including an item of damages or other relief -- that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g); *accord Turner v. Home Depot U.S.A., Inc.*, No. 11CV2085, 2012 WL 6051095 (D. Colo. Dec. 4, 2012) (considering the after-acquired evidence defense on summary judgment); *Haines v. Cherokee Cnty.*, No. 08CV2916, 2010 WL 2821853, at *30–31 (N.D. Ga. Feb. 16, 2010) (unpublished) (listing other cases considering the after-acquired evidence defense on summary judgment).

Advance argues that it discovered evidence, after terminating Mr. Hallmon, that he had falsified his employment application in three material respects: that he had received a high school degree, that he had received an associate's degree, and that he had never been convicted of a crime. Advance argues that the falsifications were severe enough to warrant termination had Advance been aware of them, and that Advance would have in fact terminated Mr. Hallmon for them. Mr. Hallmon counters that Advance was aware of at least his criminal history when it rehired him in 2006, that a high school degree is not required for Mr. Hallmon's position, and that Advance would not have in fact terminated him for falsifying his application.

14

Because a reasonable jury could conclude either that Advance was aware of the misconduct in question or that the wrongdoing was not severe enough that Advance in fact would have terminated Mr. Hallmon on those grounds alone, summary judgment is denied on the defendant's after-acquired evidence defense.

**Order**

Defendant's motion for summary judgment [#26] is GRANTED IN PART AND DENIED IN PART.  The Court enters partial summary judgment dismissing plaintiff's Second and Fifth Claims for Relief.  Summary judgment is denied with respect to the remainder of plaintiff's claims for relief.

DATED this 29th day of January, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge